## 'ARMSTRONG *v.* PENNEBAKER.

## DAVIS *v.* PENNEBAKER.

## SUMMERS *v.* PENNEBAKER.

CONTRACTS; LIENS; ATTORNEY AND CLIENT; ESTOPPEL.

1. A condition in a contract between persons claiming an interest in a fund arising from the collection of a claim against the United States and attorneys who collected the claim, under a `50 per cent contingent fee stipulated for with an administrator *de bonis non*, providing for the refunding to such claimants of a part of the fee, if they succeed "in establishing a claim against the estate" represented by the administrator, does not require that the claim be established as a hostile one against the estate, but is complied with where the claim is established under the will of the administrator's decedent.

2. An attorney who has advised his clients to make certain contracts respecting a fund in control of the court is not entitled thereafter to assume an inconsistent position, and assert a lien for services on the fund that would defeat the contracts.

Nos. 2377, 2378, 2379. Submitted April 8, 1912. Decided May 30, 1912.

HEARING on appeal from decrees of the Supreme Court of

the District of Columbia relating to the disposition of a fund on deposit in bank in control of the court.

*Reversed in Nos. 2377 and 2379. Affirmed in No. 2378.*

The COURT in the opinion stated the facts as follows:

These appeals all relate to the disposition that should be made of a certain fund on deposit in bank in control of the court. The question is to be decided in accordance with the construction that shall be placed upon the contracts in pursuance of which the fund was deposited. But before the question can be fairly presented, a concise history of the litigation must be given.

Warren Mitchell, of Louisville, Kentucky, who died in 1889, had an uncollected claim against the United States for 738 bales of cotton that had been seized by the government during the Civil War, and the balance covered into the Treasury. He left a will directing his executor to prosecute the claim, and stating: "Should my executor recover the amount due me from the government, memorandum of said claim is made a part of this will, and is attached, and will guide him in settling between the parties interested with me in said claim, and to fix the compensation for my expenses and services to be deducted from the whole proceeds before division is made." No such memorandum was attached to the will and none was found until years afterwards. The memorandum, when found, was identified, and was finally probated as a part of the will. It declared that the cotton in question had been taken from Mitchell's possession, and that 140 bales thereof belonged to W. W. Summers, 40 bales to R. T. Wilson, 158 bales to Mitchell, individually, and 400 bales to Mitchell & Armstrong, a firm in which Warren Mitchell had been a partner. It declared that of said 400 bales 200 belonged to Mitchell and 200 to the heirs of C. Q. Armstrong, deceased. It declared that Mitchell had had control of the claim for more than twenty years, and had paid all expenses incurred in its prosecution, and was entitled to compensation therefor. The memorandum was dated

and signed by Mitchell, and was declared thereby to be a part of his will.

The executor died without collecting the claim. But the heirs and next of kin of Mitchell, except two or three, representing only a small fraction in interest, made a contract with a law firm in Washington, Pennebaker & Jones, to collect the claim for 50 per cent thereof. The better to bind all interests to this contract, Pennebaker & Jones had Elliott K. Pennebaker, of Louisville, appointed administrator *de bonis non,* and this administrator, with the consent of the probate court, entered into a contract with Pennebaker & Jones to prosecute the claim upon a contingent fee of 50 per cent. All this was before the memorandum came to light. Pennebaker & Jones succeeded in securing an appropriation from Congress in payment of said claim, amounting to $128,692.22. The appropriation was payable to the administrator *d. b. n.* But after the appropriation had been made, and before it had been paid, the representatives of the parties named in the memorandum came to Pennebaker & Jones and presented the memorandum, and claimed that they were not bound by the fee agreement. Thereupon Pennebaker & Jones filed in the supreme court of the District of Columbia their original bill in equity against the administrator, setting forth the facts; alleging that the administrator had paid them only one half of their fee, and refused to pay the balance, and was about to take the fund out of the jurisdiction; and praying for an injunction and receiver. The administrator answered, setting forth that Armstrong and Wilson had objected to the payment of the fee as being unreasonable, and claimed to be interested in the estate and in the fund by virtue of the memorandum, wherefore he could not safely make a full settlement with Pennebaker & Jones. On the same day the answer was filed, the contracts in question were also filed. These were executed between Pennebaker & Jones on the one hand, and the parties claiming under the memorandum on the other. The contracts are three in number and are identical except as to names and amounts. They made the American National Bank a third party thereto, for the purpose of re-

ceiving and paying the money in accordance with the contract. The contract with Summers, which will serve as an example, recites the act of Congress making the appropriation, the payment of the sum appropriated to the administrator, under the contract aforesaid, the payment by the administrator to Pennebaker & Jones of one half of their fee, his refusal to pay the other half solely because of the assertion by said parties claiming under the memorandum that they had an interest in the sum appropriated, the institution of Pennebaker & Jones's suit against the administrator to recover the other half of their fee; that it was claimed that Summers owned 140 bales of said cotton, and that Mitchell was liable to him and his administrator therefor as trustee or bailee, and that it was claimed that Mitchell *"did, by the fourth clause of his last will and testament, provide that in the event his executors should recover anything for and on account of the seizure of said cotton, the same should be settled between the parties according to a memorandum purporting to be made a part of said will and attached thereto;"* and that the parties claiming under said memorandum objected to the payment of the fee; and then went on to provide that the parties claiming under the memorandum consented, so far as affected their interests, that the administrator *de bonis non* should pay to Pennebaker & Jones the full amount of their fee, on condition that, if the said parties claiming under the memorandum should succeed *"in establishing a claim against the estate of Warren Mitchell* in any court of competent and final jurisdiction," then Pennebaker & Jones should refund to them a certain share of said fund, "provided that no part of such refund shall be paid to the said party of the second part until he shall succeed *in establishing a claim against said estate of Warren Mitchell,* deceased, in any court of competent jurisdiction." As a security for the performance of the contract, Pennebaker & Jones agreed to immediately deposit in escrow with said bank the sum of money so to be refunded, subject to the terms of said contract. Particular reference was made to the Jefferson circuit court of Kentucky, and to possible appeals therefrom, wherein it was expected the question would be de-

termined.    There were other special provisions, which, however, throw no light upon the present question.

The fund was paid into said bank in accordance with these contracts and under the order of the court. The litigation in Kentucky was carried through the courts there, and resulted in a decree in favor of the parties claiming under the memorandum.    Nevertheless the firm of Pennebaker & Jones, through its surviving partner, insists that the fund should not be paid over to said claimants, because, as it asserts, the claimant did not prevail in the Kentucky courts *upon the grounds* upon which said contracts provided that they must recover in order to be entitled to the refund.    Accordingly, Charles D. Pennebaker, the surviving partner, filed a supplemental bill setting forth his position that the claimants under the memorandum had failed to establish their claim as they were required to do by said contracts, and praying that the fund on deposit in the bank be decreed to him.    The claimants under the memorandum answered the supplemental bill, and their answer has also the effect of a cross bill.    Testimony was taken under the issues. The decree below sustained Charles D. Pennebaker's contentions.

*Mr. E. Hilton Jackson* and *Mr. Stanley D. Pearce* for the appellants in Nos. 2377, 2379.

*Mr. B. S. Minor, Mr. Charles C. F. Carusi,* and *Mr. Eugene A. Jones* for the appellees.

*Mr. R. Ross Perry* and *Mr. R. Ross Perry, Jr.,* for appellant in No. 2378.

*Mr. Charles F. Carusi* and *Mr. Eugene A. Jones* for the appellee.

Mr. Justice STAFFORD (sitting in place of Mr. Justice VAN ORSDEL) delivered the opinion of the Court:

Thus it will be seen that the sole question between these par-

ties is whether the claimants under the memorandum, in order to be entitled to the refund, were only required to establish a claim against the estate of Warren Mitchell in the Kentucky courts, using the word *"claim"* in the broad sense of the word, which would include their right under and by virtue of the will of Warren Mitchell, or whether they were obliged to recover upon a special and distinct ground, namely, that the bales of cotton or the proceeds thereof, representing their share of the fund, belonged to them independently of the will of Mitchell, so that they stood as independent owners thereof, and had a claim against Mitchell's estate therefor, which they could make good as a hostile claim, without relying at all upon the will. The latter is the ground taken by Charles D. Pennebaker, for he insists that this is the true construction of the contracts. His argument is that the claimants under the memorandum had no right to question the amount of the fee, if they had no claim except under the will of Warren Mitchell, because in that case they would be bound by the contract which had been entered into by the administrator. He argues that the position they took leading up to the contracts was that they were not bound by the administrator's contract, for the reason that they had an independent, hostile claim against the estate; and that when this fact is kept in mind, it is easy to see that the contracts in question were drawn with reference to this position and were intended to require the claimants under the memorandum to make good their claim as an independent, hostile claim against the estate, and not under and by grace of the will.

But we think this argument is not well founded, inasmuch as it runs counter to the plain language of the contracts themselves. In reciting what the claims were, the contracts distinctly state that one of the positions of these parties was that Mitchell, by the fourth clause of his will, directed that, if his executor should recover on account of the cotton, the shares should be settled between the parties according to the memorandum. This was one of the grounds upon which the claim referred to in the contracts stood; and when the contracts, in their later clauses, referred to "establishing a claim against

the estate of Warren Mitchell," they necessarily embraced a claim made upon this ground, namely, a claim enforceable under and by virtue of the will of Warren Mitchell. Moreover, the evidence clearly shows that the question of the validity of the memorandum as a part of the will was a subject of animated discussion between the parties preliminary to the drawing up of these contracts. Why that question should have been discussed, and why Pennebaker & Jones should have taken the position, as they did, in that discussion, that the memorandum was no part of the will, is not easily to be reconciled with the position taken by Charles D. Pennebaker now; for his present position is that he could not be harmed by a recovery on the ground that the memorandum was a part of the will, but only by a recovery on the ground that the claim was a hostile one against the estate.

We have gone into the case to this extent in order that the grounds of our decision might be made clear to the parties; and we forbear to extend this opinion any further, because it must be manifest that no question of law is presented the decision of which can be of interest or use to the profession generally.

Our conclusion is that the decree below must be reversed, with costs, and the case remanded with directions to enter a decree awarding to Henry R. Summers, administrator of W. W. Summers, John A. Armstrong, administrator of C. Q. Armstrong, deceased, and Marshall Orme Wilson, Richard T. Wilson, Jr., and James M. Edwards, executors of Richard T. Wilson, deceased, the amounts to which they are severally entitled as their respective shares of the fund in the American National Bank under the aforesaid contracts, interpreted in accordance with this opinion.                    *Reversed.*

There is another appeal to be disposed of, that of Henry E. Davis, intervening petitioner, whose petition, by decree of the court below, was dismissed, having been adjudged bad upon demurrer. That petition alleged that Davis had been employed by Pennebaker & Jones before the institution of their suit

against Mitchell's administrator for professional services; that said suit was instituted upon the advice and by the service of Davis; that the payment of one half said fee, and the arrangement by which the fund in question was paid into the American National Bank, were brought about by said Davis; that Charles D. Pennebaker is entitled to said fund remaining in bank; and that Davis by virtue of an arrangement and understanding between Pennebaker & Jones and himself is entitled to a lien thereon for services rendered Pennebaker & Jones as attorneys in said suit, and that the amount of his said lien is sufficient to absorb the whole of said fund. Wherefore he prays that he might be adjudged to have a lien superior to that of any other person upon said fund. The demurrer to the petition was sustained upon the ground that the facts set forth did not show a sufficient agreement between Davis and Pennebaker & Jones to lay the foundation for a lien. The petition did not proceed upon the theory that Davis would be entitled to the fund as against the claimants under the memorandum; but this court is now asked to permit an amendment of the petition in this regard, if it shall hold that the fund belongs to such claimants, and not to Pennebaker & Jones. The proposed amendment asserts that Davis is entitled to priority even as against the claimants under the memorandum, notwithstanding the contracts entered into between Pennebaker & Jones on the one hand and said claimants on the other, upon the theory that said contracts were entered into after Davis's lien had attached. It is urged that Davis was the attorney who brought the original bill in this suit, and that no contract could be made between his clients, the complainants therein, and the claimants under the memorandum, that would have any effect on his right to be reimbursed not only for services he had rendered already, but also for such services as he might render thereafter. But, as we have already recited, the intervening petition itself shows, in the first paragraph thereof, that these contracts between Pennebaker & Jones, the clients of the petitioner, on the one hand, and the claimants under the memorandum on the other, were made, and the decree based thereon was rendered, in this very

suit, while it was being conducted and managed on the part of Pennebaker & Jones by the petitioner himself. The natural inference is that he knew all about the contracts in question, and advised his clients to make them. Indeed that is the meaning we attach to the first paragraph of the petition. Apparently·he is in no position to assert a lien that would defeat those contracts. He was rendering no service to the claimants under the memorandum by bringing a suit and having the fund detained in this jurisdiction; and when, for and on the part of his clients, he brought about an arrangement represented by the contracts in question and the decree based thereon, he took a position which was inconsistent with the position he is taking now, which is that he is entitled to the whole of the fund himself.

For these reasons, if for no other, we cannot grant the petitioner's application to amend. If the amendment were made, it could not avail the petitioner. Davis having no possible right to assert a lien unless the fund should be found to belong to Pennebaker & Jones, and the claim of Pennebaker & Jones having been found unwarranted, there is no occasion to disturb the decree of the court below, which ordered the intervening petition dismissed. Although the decree in this regard was rendered upon another ground, the decree itself was correct, and is therefore affirmed, with costs. *Affirmed.*